(No. 81-CC-2383-

DUDLEY R. DYE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 27, 1990.*

SPENCER W. SCHWARTZ & ASSOCIATES, P.C., for Claimant.

NEIL F. HARTIGAN, Attorney General (JANICE SCHAFFRICK, Assistant Attorney General, of counsel), for Respondent.

SOMMER, J.

The Claimant, Dudley Dye, is seeking damages for personal injuries sustained in a motorcycle accident on Old Skokie Road, just north of Russell Road in Lake County, Illinois. Russell Road intersects the east side of Old Skokie Road, and at the intersection, Old Skokie Road consists of four lanes, two southbound and two northbound. Old Skokie Road is maintained by the State.

On June 22, 1980, at approximately 3:30 p.m., the Claimant was driving a motorcycle in the southbound lanes of Old Skokie Road. The day was hot and sunny and the pavement was dry. The Claimant contends that when he attempted to change from the left southbound lane to the right southbound lane, he struck a pothole and a series of ripples, and these defects in the road caused him to fall. On the other hand, the State contends that the pothole and the ripples were not the cause of the accident; rather the Claimant braked because he saw a truck at the Russell Road intersection and the brakes locked and caused him to fall, or the Claimant was inattentive and fell when he should not have.

The State is not an insurer of accidents that occur on its highways. In order to recover, a Claimant must show

that the condition of the highway was hazardous and the proximate and direct cause of the accident; and this must be proved by the preponderance of the evidence. (*Kavalauskas v. State* (1963), 24 Ill. Ct. Cl. 361.) Preponderance of the evidence is more than the weight of the evidence, but also includes the credibility and persuasiveness of the evidence.

In this case, the Court finds itself in the position of having to weigh and judge the evidence in order to determine whether the Claimant has met his burden of proof.

The Claimant testified that he felt a jolt and a series of bumps just before he fell. At the time, he was gradually going from the left southbound lane to the right southbound lane.

There is little dispute that near or at the site of the accident, the seam between the southbound lanes was split to a width of 6 or 7 inches, a depth of 2½ inches, and a length of 33 inches, and on the right of the seam were two ridges in the pavement beginning about 50 feet from the hole and about 20 feet apart. The split was caused by an overlayer of material having worn away.

The Claimant testified that he did not see the hole or ridges because of the bright sun and because he was watching out for a truck on Russell Road at the intersection of Old Skokie Road. The Claimant's testimony was supported by Kenneth Dombeck, a friend, who was riding a motorcycle behind the Claimant.

A conflict in the evidence arises upon the testimony of the investigating officer, State Police Officer Junk. Both the Claimant and Kenneth Dombeck stated that the Claimant was in the ambulance when Officer Junk

arrived and that the Claimant and Officer Junk had no discussion concerning the cause of the accident. Officer Junk then testified that he asked the Claimant what happened, and the Claimant "stated his front wheel had locked up and he lost control." At that point in his testimony, Officer Junk asked to use his accident report in order to refresh his memory. He then testified that the Claimant "told me about the brakes locking up on the front." Officer Junk did not talk to Ken Dombeck. On cross-examination, Officer Junk admitted that in his report he did not attribute the statement about the brakes to the injured party and that normally such would have been written down as "driver stated." Additionally, Officer Junk admitted seeing no skid marks that would have been consistent with the Claimant's brakes locking. However, Officer Junk testified that the statement concerning the brakes could only have come from a witness or he would not have noted it, and he interviewed no witnesses other than the victim. No objection was made to Officer Junk's testimony at the hearing.

Both parties introduced expert testimony. Matthew Sielski, the Claimant's expert, gave the opinion that the hole was a hazard and could create a situation that would cause a "motorcycle to be out of control * * *." Mr. Sielski had examined the accident site. Mr. Sielski stated that he had never ridden a motorcycle. Dror Kopernic, a motorcycle safety specialist and expert witness for the Respondent, testified that he conducted three different tests which demonstrated in his opinion that neither the hole in question nor the washboard effect of the pavement could have caused the accident. Using a motorcycle almost identical to the Claimant's, Mr. Kopernic conducted several tests which duplicated

the road conditions and driving speed of the Claimant and a video of one of these tests was shown. Mr. Kopernic testified that he repeatedly rode over a hole deeper than that ridden over by the Claimant and at the same speed and at a similar angle. He noticed only a very minor jolt and no loss of control. Mr. Kopernic also demonstrated mathematically how a motorcycle riding at 40 to 45 miles per hour would not be significantly affected by riding over a hole the size and depth of the hole in the Claimant's case. Also, the "washboard effect" which allegedly contributed to the Claimant's fall was discounted as a contributing factor. Mr. Kopernic opined that the hole and the ripples were "probably not" the proximate cause of the accident, and that the hole and ripples were visible from some distance and should have been easily negotiated by the Claimant.

On cross-examination, the Claimant stated that two weeks later he and his wife went to the accident scene and took photographs of the road and the accident scene, but did not take a picture of the hole that allegedly caused the accident. The Claimant did not draw the hole in the diagram made by him on his insurance report made out about the same time, but he did discuss the hole and ridges in the narrative.

The annals of this Court contain a case similar to the present one, namely *Wendler v. State* (1961), 24 Ill. Ct. Cl. 273. In the *Wendler* case, an automobile went out of control and struck another automobile. The driver of the errant vehicle testified that a crack in the road caused him to lose control, but he had told an investigating officer that his wheels had locked up, and he did not mention the crack to the investigating officer. Additionally, the driver could not locate the site of the accident.

This Court ruled that it could not determine, under the circumstances, the proximate cause of the mishap. This Court noted that the testimony immediately after the accident was more convincing than that later. Added to that were too many discrepancies in the testimony, along with the facts and circumstances which made it difficult to determine the proximate cause. In other words, the Claimant did not prove his case by a preponderance of the evidence.

As we have previously stated, preponderance of the evidence is a matter of weight and also credibility and persuasiveness. In this claim, we find that the Claimant has not, by a preponderance of the evidence, proven that the hole and ripples were hazardous under the circumstances or were the proximate cause of the mishap. As in the *Wendler* case, there are discrepancies between the testimony closer in time to the accident and the testimony later. There is the obvious conflict between the testimony of the Claimant and his friend, Kenneth Dombeck, and Trooper Junk. If the Claimant is to be believed when he testified that he made no statement, it is necessary to find Trooper Junk's testimony in error. This conclusion is not compelled by the testimony before us; rather, the contrary is equally likely, if not more so. Also, closer in time to the mishap is the odd fact that the Claimant did not photograph the hole that allegedly caused the accident when he went to the scene and made a number of photographs of the roadway. We reason that the Claimant had not focused on the hole as the alleged cause of the mishap at that time.

At a later time when the hole had been assigned by the Claimant as the cause of the accident, expert testimony differed as to whether the hole was a hazard

for a motorcyclist. If the Claimant's expert is to be believed, it is necessary to give his testimony more weight and credence than that of the Respondent's expert, even though the Respondent's expert was an expert in motorcycle accidents and made numerous demonstrations at the site. That the Claimant's expert should prevail is not evident from the testimony.

This Court concludes that, as in *Wendler*, there are simply too many conflicts and discrepancies in the testimony to find that the issues have been proven by a preponderance of the evidence.

It is therefore ordered that this claim be denied and dismissed with prejudice.